IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                    3:03CR52/RV
                                       3:05CV98/RV/MD

JIMMY GILLIMS

_____

<u>REPORT AND RECOMMENDATION</u>

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 103). The government has filed a response (doc. 111) and the defendant has filed a reply (doc. 113). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I. BACKGROUND

Defendant was charged in a three count indictment with conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 50 grams or more of cocaine base. Represented by appointed counsel Spiro Kypreos, he pleaded guilty to count one, the only count in which he was named, on September 3, 2003. He was sentenced to a term of life imprisonment. His conviction and sentence were affirmed on September 30, 2004. (Doc. 102).

In the present motion, defendant raises four grounds for relief. He claims that his rights were violated under the Due Process Clause, the Sixth Amendment, and the Fifth Amendment and that he received ineffective assistance of counsel.

## II. LEGAL ANALYSIS

Standards applicable to § 2255 Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). As recently explained by the Eleventh Circuit, "[r]elief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to

no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

<u>Due Process violation</u>

Defendant first contends that he was denied due process because he did not know that the government had filed a notice of enhancement (doc. 37) until sentencing. He also claims that the notice was insufficient because one of the three listed felonies was actually a misdemeanor.

Defendant claims he was told at his rearraignment that the sentence he faced was between 188 and 235 months imprisonment, and that he knew nothing about the notice of enhancement. Defendant's recollection of his rearraignment is mistaken. The notice of enhancement, the fact of defendant's three prior felony convictions, and the potential life sentence he faced were all mentioned at the beginning of his plea proceeding. (Doc. 87 at 3-4). In addition, the court specifically asked the government what the maximum punishment was in light of the enhancement. The AUSA stated that depending on the drug weight ultimately found by the court, the defendant could face a minimum mandatory term of life imprisonment. (Doc. 87 at 16-17). Defendant indicated in response to a question from the court that he understood that he faced a term of life imprisonment. (Doc. 87 at 17). The court further explained that the sentencing guidelines are subject to the statutory mandates, and reiterated that the mandatory life sentence was the most serious potential punishment. (Doc. 87 at 17-18). The defendant again indicated that he understood this, as well as the fact that no one could predict or promise what his sentence would be. (Doc. 87 at 18-19). Contrary to defendant's recollection, as represented in the instant motion, no particular guidelines range was ever mentioned. Finally, the court asked the defendant

whether he understood that there is no parole in the federal system, so that a term of life means actual life.  He responded in the affirmative.  (Doc. 87 at 19).

Defendant is clearly factually mistaken about what transpired at his rearraignment proceeding.  He made statements under oath at this proceeding that directly contradict the arguments he now makes.  A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings.  *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of verity.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629.  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise.  *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing  *United States v. Sanderson*, 595 F.2d 1021 (5th  Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th  Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th  Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991).  After having admitted under oath in open court that he knew of the penalties he faced, he cannot now claim the reverse.[1]

The record also contains the affidavit of Spiro T. Kypreos which further disproves the defendant's contention that he "did not know" about the enhancement.  Mr. Kypreos states that he explained to his client that unless he wanted to provide substantial assistance, which the defendant states he did not, he should "take the case to a jury trial since he was facing mandatory life."  (Doc. 111, exh. A at 1).  Mr. Kypreos also attached his barely legible handwritten notes from his conversation with the defendant.  On the last

---

[1]In defendant's reply, he makes the nonsensical and factually incorrect claim that the enhancement filed on August 11, 2003, was filed <u>after</u> he entered his guilty plea on September 3, 2003.  (Doc.113 at 2-3). He also appears to allege that it was filed after voir dire, when in actuality, no voir dire was ever held in this case, and the enhancement was filed before voir dire was scheduled to begin.

page of these notes, the phrase "MANDATORY LIFE" is scrawled in large letters.  (Doc. 111, exh. A at 8).  The rearraignment transcript, as supported by counsel's affidavit defeat defendant's claim of a due process violation due to his alleged lack of knowledge of the notice of enhancement.

The second part of defendant's due process claim is that the notice of enhancement was deficient because one of the three listed felony convictions was actually a misdemeanor.  The Notice of Enhancement lists a 1989 Escambia County conviction for possession of a controlled substance, a 2001 Escambia County conviction for possession of cocaine, and a 2002 conviction for possession of marijuana in Texas.  (Doc. 37).  The government conceded at the final sentencing that the 1989 conviction was a misdemeanor, and defendant does not dispute the legitimacy of the other two felony convictions.  Under 21 U.S.C. § 841(b)(1)(A), only two previous felony convictions are required for a mandatory life sentence to apply.  Therefore, even to the extent the notice of enhancement improperly included a misdemeanor conviction, it was not rendered invalid in its entirety.

<u>Sixth Amendment violation</u>

Defendant's next contention is essentially that his sentence was in violation of *Blakely v. Washington*[2] and *Apprendi v. New Jersey*,[3] because the sentencing court determined, by a preponderance of the evidence, that his prior felony drug convictions subjected him to a mandatory life sentence.[4]

In the seminal case of *Apprendi v. New Jersey*, the Supreme Court held that, "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490, 120 S.Ct. at 2362-63 (emphasis added).  In *Blakely*

---

[2]  ***Blakely v. Washington**,  ____ U.S. ____, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).*

[3]  ***Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).*

[4]  **Again, within this argument the defendant represents that he was told he faced a sentence of between 188 and 235 months imprisonment.  As noted above, the transcript of the plea colloquy reflects that this is factually incorrect**.

*v. Washington*, the Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" 124 S.Ct. at 2537-38 (emphasis in original); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*). The *Apprendi* holding was reaffirmed in *United States v. Booker*, 543 U.S. ___, ___, 125 S.Ct. 738, 756 (2005). However, "[t]he government need not allege in its indictment and need not prove beyond a reasonable doubt that a defendant had prior convictions for a district court to use those convictions for purposes of enhancing a sentence." *United States v. Marseille*, 377 F.3d 1249, 1257 (11th Cir. 2004) (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228, 118 S.Ct. 1219, 1223, 140 L.Ed.2d 350 (1998)). The Eleventh Circuit found this conclusion to be "undisturbed" by *Apprendi, Blakely,* and *Booker*. *United States v. Shelton*, 400 F.3d 1325, 1329 (11th Cir. 2005). Therefore, the sentencing court's conclusion that the defendant's two prior felony drug convictions provided a valid basis to enhance the defendant's sentence was proper.

<u>Fifth Amendment claim</u>

Defendant also contends that his rights were violated because the sentencing court admitted evidence regarding his alleged participation in drug activity after his 2002 Texas conviction. DEA Agent Charles Gravat testified about the facts and circumstances surrounding a "controlled buy" of cocaine made from the defendant by the Escambia County Sheriff's Office on April 19, 2002 and the seizure of cocaine from the defendant's residence pursuant to a state search warrant on May 1, 2002. Defendant contends that because charges stemming from the controlled buy were dismissed, and the evidence of the search was suppressed in state court, presentation of the evidence in conjunction with this case was improper. The government argues, citing *United States v. Lynch*, 934 F.2d 1226 (11th Cir. 1991), that neither the fact that the "controlled buy" charges were dismissed in state court nor that the evidence from the search was suppressed bars the admission of the evidence in this court. In *Lynch*, the court found that the potential benefit of extending the exclusionary rule to sentencing proceedings "would have a disruptive effect far out of proportion to any incremental deterrence of police misconduct." 934 F.2d at

1235. (citing *United States v. Vandemark*, 522 F.2d 1019, 1021 (9th Cir. 1975)); see also *United States v. Acosta,* 303 F.3d 78, 86 (1st Cir. 2002) (exclusionary rule does not bar the use of evidence seized in violation of a defendant's Fourth Amendment rights in sentencing) (collecting cases: *United States v. Ryan*, 236 F.3d 1268, 1271-72 (10th Cir. 2001) (citing *United States v. Brimah*, 214 F.3d 854, 857-59 & n. 4 (7th Cir. 2000) (holding exclusionary rule at sentencing should not bar introduction of evidence seized in violation of Fourth Amendment, but leaving open question of whether the rule applies when police intentionally act illegally to enhance defendant's sentence); *United States v. Tauil-Hernandez*, 88 F.3d 576, 581 (8th Cir. 1996) (holding the exclusionary rule does not apply at sentencing); *United States v. Kim*, 25 F.3d 1426, 1435 & n. 8 (9th Cir. 1994) (admitting evidence from illegal search and seizure at sentencing, but leaving open the question of whether the rule applies when police intentionally act illegally to enhance defendant's sentence or had an "undue incentive" to so act); *United States v. Montoya-Ortiz*, 7 F.3d 1171, 1181 & n. 10 (5th Cir. 1993) (holding exclusionary rule is generally inapplicable to sentencing proceedings, but suggesting that illegally seized evidence could be excluded if it was seized for the sole purpose of enhancing defendant's sentence); *United States v. Jenkins*, 4 F.3d 1338, 1344-45 (6th Cir. 1993) (permitting the use of illegally seized evidence after finding no indication that evidence was obtained to enhance defendant's sentence); *United States v. Tejada*, 956 F.2d 1256, 1263 (2nd Cir.1992) ("Absent a showing that officers obtained evidence expressly to enhance a sentence, a district judge may not refuse to consider relevant evidence at sentencing, even if that evidence has been seized in violation of the Fourth Amendment."); *United States v. McCrory*, 930 F.2d 63, 69 (D.C.Cir.1991) (admitting illegally obtained evidence and reserving question of whether suppression would be necessary if illegal search was done with purpose of increasing defendant's sentence)); *United States v. Torres*, 926 F.2d 321, 325 (3rd Cir. 1991) (same))).

*United States v. Tejada*, 956 F.2d 1256, 1263 (2nd Cir. 1992); *United States v. Birmah*, 214 F.3d 854, 856 (7th Cir. 2000).

Furthermore, the evidence was introduced in order to establish that the defendant continued to engage in drug activity following his 2002 Texas conviction for possession with intent to distribute marijuana. (Doc. 88 at 63). This was relevant to the court's determination of whether the Texas conviction, regardless of whether it may have been part of the instant conspiracy, could be counted for purposes of § 841(b)(1)(A). See *United States v. Hansley*, 54 F.3d 709, 716, 717 (11th Cir. 1995) (citing *United States v. Garcia*, 32 F.3d 1017, 1020 (7th Cir. 1994); *United States v. Hughes*, 924 F.2d 1354 (6th Cir. 1991)). Counsel objected, but the court found the hearsay evidence presented by Agent Gravat to be sufficiently reliable to prove the defendant's participation in ongoing drug activity after the Texas conviction had become final. (Doc. 77). Defendant is not entitled to relief on this ground.

B.  Ineffective assistance of counsel

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of

an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original).

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A

significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 122 S.Ct. 234 (2001).

In this case, defendant contends that counsel was constitutionally ineffective because he failed to explain his options to him concerning the plea, that counsel did not tell him about the enhancement and "coerced" him to plead guilty. Defendant states that he would not have pleaded guilty had he known about the mandatory life sentence.

The plea colloquy in this case is the best evidence to refute defendant's claims. At the beginning of the plea proceeding, counsel explained to the court about the discussions he had with his client and the comparison between entering a plea and cooperation agreement versus a straight up plea and what his rights would be if he elected to have a jury trial. (Doc. 87 at 3-4). Furthermore, during the standard part of the plea colloquy, the court informed the defendant of his rights and questioned him to ensure he understood what rights he was giving up by entering a guilty plea. (Doc. 87 at 8-11). This court can not speculate on what other "options" the defendant wished to have explained to him, as he does not specify. Counsel's performance has not been shown to be constitutionally deficient.

Defendant's claim that he did not know about the enhancement or the mandatory minimum life sentence was refuted above.   Even if counsel made a prediction that defendant's sentence would be lighter, and he was wrong, the imposition of a sentence greater than that expected by defendant, or predicted by counsel, is not adequate grounds for vacating a defendant's sentence under 28 U.S.C. § 2255.   *Tamayos-Ramos v. United States,* 2005 WL 2012771 (M.D. Fla. 2005) (citing *United States v. Frontero*, 452 F.2d 406, 411 (5th Cir. 1971) (finding that ordinarily, a defendant cannot "rely on the promise of the prosecutor, who has no authority to make sentencing promises, or on the inaccurate representations of an overzealous attorney."); *Berlanga v. United States*, 394 F.2d 615 (5th Cir.1968); *Floyd v. United States*, 260 F.2d 910, 912 (5th Cir. 1958), cert denied,359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680 (1959) ("It has nowhere been held that if counsel advises his client in good faith that a plea of guilty will result in a recommendation of a lighter sentence ⋯ this strips a plea of its voluntary nature."). See also *United States v. Pallotta,* 433 F.2d 594, 595 (1st Cir. 1970) (finding that a "[m]ere prediction by counsel of the court's likely attitude on sentence, short of some implication of an agreement or understanding, is not ground for attacking a plea.") (quoting *Domenica v. United States*, 292 F.2d 483, 485 (1st Cir. 1961))).   Regardless, the transcript of the plea colloquy establishes that defendant understood no specific sentence was promised to him, and that he faced a mandatory life sentence.   Counsel was not ineffective.

Finally, defendant's conclusory claim that he was "coerced" into pleading guilty is also refuted by the record.   After having been sworn under oath at the plea colloquy, defendant denied that anyone had used any force, pressure or intimidation to make him plead guilty, and indicated that he had had adequate time to discuss his case with his attorney,  that he was satisfied with the way counsel had represented him, and that he had no complaint about how counsel had advised him or negotiated on his behalf. (Doc. 87 at 20-21).   The court specifically concluded after hearing the defendant's responses to its questions that he had made his plea of guilty knowingly, freely and voluntarily.  (Doc. 87 at 22). As noted above, a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting his plea constitute a formidable barrier in any

subsequent collateral proceedings.  *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)*; United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001) (finding no facts in the record to support defendant's allegation of a coerced plea).  Defendant has not shown any reason why the court should disregard his sworn statements, and he has not established that counsel was ineffective for somehow having 'coerced' him into pleading guilty.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 103)  be DENIED.

At Pensacola, Florida, this 15th day of September, 2005.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).